All rise. Hear ye, hear ye, hear ye. This Honorable Public Court of the Second District is now open for the pursuant to adjourn. The Honorable Andrew Rafferty, Georgia State Society. Please be seated. Is that my hearing aid? The noise. Your Honor, the first case in the morning call is People v. McClain. People v. McClain on behalf of the Capitol Orchestra. Fletcher Hamill on behalf of the athletes David Cade and Bernard. Both sides ready to proceed? And you may proceed when you are ready, Counsel. Good morning, Your Honors. My name is Fletcher Hamill and I represent the defendant Appalachians Frank John Wittenberg and Anthony McClain Hold on just a second. And once the buzzing goes down, could you speak up just a little bit, Mr. Hamill? First case always gets the surprises. Please be seated. All right, Counsel. Let's start over. My name is Fletcher Hamill and I represent the defendant Appalachians Frank John Wittenberg and Anthony McClain. May it please the Court. Your Honor, there are three issues raised in this case. First, whether the defendants were proved guilty beyond reasonable doubt of attempted residential burglary. Whether the defendants received ineffective assistance at counsel and that their attorneys failed to settle their two trials. And thirdly, with respect to defendant Wittenberg, whether the judge manifestly erred in conducting his inquiry of the defendant's post-trial claims of ineffective assistance at counsel. I plan on talking about the first two issues here, and unless this Court has questions about the third, I'd be happy to answer them. The first two issues I believe are closely related. In essence, the first issue is that the defendants were the evidence that was legitimately introduced against the defendants was not sufficient to prove that either of them intended to commit a theft within Holly June's house. The second issue recognizes that there was in fact other evidence beyond what was legitimately introduced against the defendants that was highly prejudicial and that would not have been introduced had the defense attorneys severed the two trials. So starting with the legitimately introduced evidence. The law is that a presumption from an attempted entry into a building that the person attempting the entry did intend to commit a theft. But that presumption can be overcome by showing circumstances that the defendant did not intend to commit a theft. Two cases that I cited in my brief, Purnell and Bogusiewski, are two examples of courts finding that no reasonable trier of fact could have found that defendants intended to commit a theft. Isn't the trier of fact supposed to also determine credibility, essentially? Yes. And there was an innocent explanation for their presence there. Your position is there was an innocent explanation. Absolutely. But what about the fact that we're lost and that was one of the explanations given but yet McClain, who I thought was the driver of the car, had been dating a woman who was the father of a child and he'd been in the DeKalb area for at least eight years. Well, he had been in DeKalb for at least eight years. There's no evidence of where he was in that particular... The place where they were, where Holly King's house was, was about four miles outside of DeKalb in a rural area. There's no evidence that he had any familiarity with that area outside of DeKalb. But isn't the question whether or not the trier of fact believed his innocent explanation? I mean, just because he gives an explanation doesn't mean the trier of fact has to believe it. Aren't we bound by that credibility issue? Well, it's true that the trier of fact does not have to believe his explanation. However, the trier of fact does have to look at all the circumstances and all the evidence that's presented to it. And that's where these cases, Bogusiewski and Purnell, come in. Well, can't you distinguish Purnell and Purnell? He followed the young girl. Right when she opened the apartment door, he followed her in. Brzezinski is the one where I believe it was the girlfriend who went into the business and was saying, hello, hello, hello. And then she actually was charged with a theft, I think, for stealing his card. But in this particular case, I mean, I think what both of my colleagues are saying, you have to determine whether a rational juror could infer the intent. Correct? Correct. So you have two guys who go up to this driveway and they go up, they ring the doorbell incessantly. So can the jurors infer that they're doing that to see if anyone is home? Well, that's the only fact in the case. Then they rattled the doorknob, right? They possibly opened the door. I would put possibly in front of rattling the doorknob as well because that's also based on just what Coon thought she heard from the other room. Right. That's right. They never denied being there. Yeah, and that's it. They possibly rattled the doorknob, they possibly opened the door. I would note that immediately after Coon heard the sound that she associated with the door opening, she actually took her children right past the door and saw that it was still closed. And she yelled stay out and asked when they left. And she yelled stay out and that is when he left. But the Star Effect does look at all the circumstances. In Purnell there's also evidence that from which the jury could have found the defendant intended to commit a theft. I mean, he did actually try to enter the building in Purnell. There was no question about that. And the defendant did flee the scene. And when he was caught by the police, he struggled with the police. And when he was caught by the police, he did deny ever being at the building. So in all these cases, there is some evidence. But what the court says is that bringing all the evidence, the circumstances that show that the defendant did not intend to commit a theft, so far outweigh the evidence that they did. Most of the evidence in the other two cases, though, that would be considered consciousness of guilt or something of that nature generally occurred afterwards, didn't it? It didn't occur as he followed her in because he ran afterwards. And in the case of the girlfriend, ex-girlfriend looking for the ex-boyfriend, the theft occurred after she talked to the guard. Here, although the conversation occurred afterward, is there anything that indicates that, you know, did they call out? Did they knock? Did they use their phone? Apparently isn't there some evidence that Mr. Wittenberg was on a phone before they left and then got back in the car and they left? Right. In fact, I think that's some of the evidence that shows that he didn't intend to commit theft. As he was walking away from the house, instead of walking away briskly, the evidence, Colin Kuehn testified that she had just yelled, stay out, to Adam. So if you, you know, on the mistakes theory, this is when he realizes he's been discovered. He doesn't try to escape. He walks slowly and I think it's very important to look at the pictures that are in the evidence in this case because you can see the path that he took. He follows the front path and it went a long way out of his way if he was going to the end of the driveway. He had to go all the way around the house, past the other front door, past the family room, this addition that was built on, toward the back of the house, all the way across. It's a very, it's a much longer route and he's talking on the cell phone the whole time and he's walking slowly, according to Holly Kuehn. This is, this is, this is that evidence that shows he didn't intend to commit theft. But Counselor, the whole thing about the cell phone, doesn't that sort of belie his explanation? He could have called and said, where so and so, how do we get back? Or used some type of GPS. Well, we don't know what kind of cell phone he had, so we don't know if he had a GPS. I don't know if, I think it's reasonable to say he didn't know where he was at that point. They were somewhere out in the country. Or there's some pretty significant landmarks like the NIU water tower. Pretty much, you can't miss that in DeKalb. Well, you can't, but you can't miss that from anywhere, anywhere near DeKalb. Those towers are visible from miles around. And the evidence was near four miles outside town. So, it's, so they were out in the distance, probably invisible. But they were also, being able to see them from four miles away. But in response to stay out, he didn't say, you know, hey, I'm just here looking for directions, can you tell me how to get back to wherever? The absence of testimony, I think the trier of fact can also be considered. Well, that's true. But on the other hand, he did nothing to hide his actions. And that's what, you know, the main thing that happened in Bozuszewski and in Pernell was that the friends did nothing, well, actually, Pernell did, but in Boguszewski in particular, she did nothing to hide her actions. That's what this defendant did. Nothing. He walked off. I'm sorry. Did the state argue at any point that this action after the discovery, we'll call it, was planned? That they, you know, they had a plan. They did have their battery at Walmart. They did know where the landmarks were visible. But did they ever argue, well, in the event that we're discovered, you know, this is the plan we will have. We will put this all together and we will walk away slowly. Well, the state did make that argument, and I think that's what is actually, what brings up a good point, because the state makes that argument, but at the same time, the state makes the argument that they parked their car at the end of the driveway to facilitate a fast getaway. So it doesn't add up. On the one hand, they're doing one thing to make a fast getaway. On the other hand, if they're discovered, I assume, otherwise they wouldn't need to. And on the other hand, their plan is to walk away slowly and pretend nothing's wrong when they're discovered. It doesn't make sense. And the only theory that all the evidence fits is that they didn't care if people saw them there, and they didn't care if anybody saw what they were doing because they didn't think what they were doing was illegal because they didn't intend a theft. And there's also, to be noted, the lack of physical evidence in this case. No burglary tools, no disguises, no gloves, no proceeds from other burglaries, nothing like that. And the defendants when they're pulled over, again, do nothing to hide what they were doing. They readily admitted that they were there, unlike the defendant Burnell who denied it, and unlike the minor in the State's case, R.A.B., who denied it twice. Everything fits one theory, and that is this was innocent conduct. Can we talk about your motion to sever? Is this, in your opinion, do you really think this is a violation? Yes, absolutely, I do, because what the jury heard was hearsay evidence from each defendant, hearsay evidence from the other defendant. Neither defendant could cross-examine the other defendant. The hearsay evidence was highly prejudicial against the defendant because it created these inconsistencies between the two statements, which did undermine their credibility. But that's not sufficient for a violation, is it? I believe that it is. I believe that it is. I mean, it's hearsay evidence that significantly undermines their credibility. I don't know of any cases where that's not sufficient. Was there a limiting instruction given by the court? There was, but under Rudin, that's not enough. Because if you look at it, the problem is the jury can't ignore this. The jury is being asked, in this case, to evaluate the truthfulness of two statements that are both pertaining to the same event, and how can you do that without noticing that the two statements are not the same? Well, Rudin requires that one expressly implicate the other in crime. So, how is statements that were made expressly implicating anyone? I mean, you just argued to us that there aren't sufficient facts to convict them. How is any statement that either one of them giving expressly implicate the other? I am not aware of any cases that say that Rudin requires expressly, and I don't think State even makes that argument. As far as I understand it, it's hearsay from another defendant. It's indivisible hearsay. The problem is that hearsay is that if the trials were separate, McLean's jury would never have heard Wittenberg's testimony, or would have heard Wittenberg's statement. Which was what? Was that they were looking for cars, and it stopped to look for cars, and that Wittenberg had never opened the door to knock on the inner door, and all those facts would have contradicted McLean's statement, which the jury obviously would have heard. But those statements don't expressly implicate anyone. The Bruton case says that. That it needs to expressly implicate the defendant in the crime. Certainly you can explain a way why he didn't see from the door. I mean, one was in the driveway, the other one was up at the door. How is the fact that they were looking for cars expressly implicate the other one? Well, it doesn't expressly implicate them. I don't think that's required. I'm not and I repeat, the State didn't make that statement. In any case, it says that that Bruton never applies if it's merely damaging. The evidence is inadmissible here. How is it damaging? Because it undermines the credibility. Each defendant's credibility is undermined by the other defendant's statement. Well, they didn't tell different stories. Well, the differences were there were differences in the details. The general story was the same. We were lost, but the details were different. And the State in the trial court, they were careful. Oh, and here in this court, I mean, they actually argued in their brief. The differences between the two statements completely eliminates any doubt that these defendants were wrongfully convicted. So the defenses were so antagonistic is what you're saying. I'm asking you, how were the defenses so antagonistic that it requires a severance? Because that's the second prong that is required for a severance under People v. James. They're that antagonistic because the two statements are inconsistent. And because each defendant gets his credibility undermined by having his co-defendant say things that are completely different and him not being able to cross-examine that co-defendant about those statements. So you're saying you don't need anything more than to have a brutal violation. Right. That's what I'm saying. There are instances to the point where they undermine the defendant's credibility. Yeah, I don't... Okay, fair enough. It's a Confrontation Clause case. The Confrontation Clause is... I'm sorry, is that my time? It is. One more thing before you go. One of the ineffective assistance claims that you have is a failure to advise of a mandatory consecutive sentence. That's for Wittenberg. Oh, on Wittenberg. Right. In that... In an arraignment, is the judge mandated to arraign with respect to minimum-maximum penalties? He is. He is. Where do you find that in 725 ILCS under arraignments 5-113? Where do you see that the trial judge is required? You know, I don't have... I would say this. Doesn't he just have to inform him of the charges against him at arraignment? Even if so, he still can't lie to him about what the penalty is. He told him the wrong penalties. And the point is, it's the point of the claim. It's ineffective assistance of counsel. It's not an error by the judge. And the point of Wittenberg's claim is that nobody told him at the time, by the time he rejected the one-year plea offer, nobody told him that he was subject to mandatory classic sentencing, and the record bears that out. Prior to the trial, the court advised him of the minimum mandatory and mandatory classic sentencing prior to trial, and he said he understood. On the day of trial. That was after he rejected the plea offer. Way before. And isn't that where the court, the only time the court is required to advise of the minimum mandatory sentencing prior to trial? It's not, but the claim is counsel didn't advise him, and counsel and the evidence in the record bears that out. The reason the judge is stating... Why isn't this an issue for a post-conviction petition? I mean, you're saying counsel never did that. That would be outside the record. Rarely does an attorney say, excuse me, I'd like the court reporter to take this down while we have this conversation. This is a crinkle issue. Yes, and I raise it as a crinkle issue. The defendant alleged this. The judge held an inquiry. The inquiry supported what the defendant said, and the judge nevertheless said there was no possibility of neglect. So I'm actually saying the judge manifestly erred in that finding, and what the judge should have done is had the post-trial counsel amend the motion and raise this ineffective assistance claim, which could then go to an evidentiary hearing and could then be resolved one way or the other. Where in the record does it indicate that the offer was withdrawn? The record does not indicate when, if ever, the offer was withdrawn, but again, we're looking at the possibility of neglect. That would be something that would come out in an evidentiary hearing on this claim. What I'm saying is there should have been an evidentiary hearing on this claim. That's the remedy you're seeking? Right, right. You proceed on the post-trial motion. Unless your honors have any questions, I would ask that you first vacate the defendant's convictions, alternatively remand for a new trial, or alternatively remand Wittenberg's case for further post-trial motions. Thank you, counsel. Counsel? Good morning, your honors. I guess I'll take the last issue you were discussing first. I have to disagree with the defendant. I think at the Krankel hearing, there was plenty of evidence, especially when you listened to the questions asked of the defense counsel and the other testimony taken, when the prosecutor said that this was discussed many times as classic sentencing. Even at the hearing, the defendant admitted that he knew that he was eligible for classic sentencing. So I don't think there's really an issue there as far as that goes. And if you read that hearing, I think that more in the context of what the counsel was saying, that he had discussed this a number of times. So I think that judge certainly made the correct decision in that hearing. During the plea negotiations, he was told several times, according to the attorney, that he was subject to the possibility of classic sentencing, correct? Well, yes, I think so. But then again, like I said, in the context of the questions asked at that hearing, the language wasn't as  I mean, there was plenty of talk that this defendant was going to get an extended sentence, and it was going to be class X in the defendant admitted that at the hearing. I just don't see it where there's really a factual question in that issue. As far as the evidence, I think Hallie Kuhn's testimony alone, without anything else, was so consistent and definitely showed it. I think a rational jury certainly could see that these defendants had an intent to burglarize that house. Couldn't the jurors see the other way as well? I mean, they walked away slowly. It's broad daylight. They sat in the car for a period of time in front of her house. They had no burglary tools. They never denied being there. They didn't flee. They parked in the front of the house. I mean, couldn't you look at it the other way as well? I think you certainly could look at it, but then I think you could also say, this is a couple of cool customers. When they realized that there was somebody in there, they knew what to do. Well, yeah, we're going to look like we're looking for directions. It's ridiculous, though, if you see the exhibit of the picture taken when you drive down that driveway, which they did, and then there's a turnaround in the back of the house. You look and you see the NIU resident towers there. I mean, the fact that they were lost seems pretty incredible, and I think a rational jury just could not see that these people could possibly lost. McClain was saying, oh, we're looking for university village apartments on Glidden Road. Well, one of the officers' testimony was, well, you had to be either on Glidden to turn on to Rich Road where the victim's house was, or you had to cross over to Glidden. Now, they knew it was on Glidden Road. It just doesn't add up. Was your owner a little inconsistent with respect to the door being open or the door not being open? Well, I don't think it was inconsistent. I think the lady knew how her house reacted to when someone opened the door, pocket doors. I think we've all experienced that in certain areas where you open the door, there's a vacuum in here, noise, you know, something else rattling. She knew her house. She's lived there. I just don't see a problem. When you ring a doorbell for five minutes incessantly, open up the door, rattle the doorknob. So you're saying he opened the screen door? Oh, definitely. Perhaps, and rattled the doorknob. Yes. Well, that was her testimony. It wasn't like she was in the room watching TV with the kids and then maybe heard this. She was watching out the window, seeing what these people were doing as soon as she heard the alarm go off in the driveway. There was just no question. She was alert. I mean, she was scared. So she knew what was going on. So I think when the jury listens to just that testimony, that was clearly enough to convict these defendants with beyond a reasonable doubt. Now, then you add McLean's inconsistent statement at the staff, where he told one officer he was looking for the apartments, and then he told another detective that he was looking for Walmart. That gives you something else. But I don't think you even need that. Well, since you're talking about the inconsistent statements and the statements from one co-defendant, attributed to one co-defendant and one attributed to another co-defendant, let's talk about Bruton. Do you think it's a Bruton violation? No. For one, I think the Ross case, our Supreme Court case, was far more opposite. The way they distinguished Bruton was that there was very slight evidence in the Bruton case. The other co-defendant implicated it. His confession implicated the other defendant. We don't have that testimony here. It's just kind of they had a little bit different stories. They both lost one with the cars, one was looking for Walmart. So your position is that's a requirement that the co-defendant must actually say defendant did it. I think Bruton says that. I haven't found a case, but certainly the Ross case distinguishes that way. I don't know if we have anything but the fact that Ross distinguishing that case and says, look, there's just really no evidence in Bruton besides his co-defendant's confession. That's a lot different than here where we have the person at home, her direct testimony, her observations and statements that had nothing to do with breaking in or trying to break in or the intent to break in. I really think that that testimony really had no It was not antagonistic to the other defendants. You have to remember that at trial, and I think the prosecutors were pretty secure in their case, but they never argued that let's use these inconsistent statements that the defendants made at the station to prove each other that their stories are wrong. One prosecutor even said don't use each defendant's statement against each other. But he told the jury that. They were given instructions. There were instructions for this particular type of situation. It really these aren't the type of statements that Bruton would contemplate, I'm sure, because there's just nothing antagonistic about them. And in fact, I think defendant and counsel could argue, well, you know, they told the story. It's, you know, one guy had this in his head. I don't think it's really that important. I think the jury convicted these two defendants on Holly Kuhn's testimony. Is there any other questions, Your Honor? Any other questions? No. Thank you, counsel. Do you wish to offer a reply? Mr. Himel, I don't want to take you off of your reply. So hold your thought. Sure. But on page 8 of your reply brief, when you talk about Bruton, you say the defendants pointed out that under the United States Supreme Court holding in Bruton v. United States, a defendant's right to confrontation is violated when his  in the crime is admitted to the jury. Is that true? Yes. So the defendant's right to  when he is admitted to the jury in a joint trial. When you were up before us before, you said that they just had to be hearsay statements introduced and created this problem. Your own rhetoric in your brief talks about the statement implicating. What are you disagreeing with? I think there's a difference between implicated each defendant because they undermine each defendant's credibility. That implicated each defendant in the crime because it gave the jury reason to believe that they were lying about their not being intended to commit a theft. So it's evidence that implicated them. It doesn't have to be one defendant pointing the finger at the other defendant saying he did it. It can just be evidence that shows that they were guilty. The inconsistency is at best we were looking for University Village or we were going to get our battery at Walmart and we got lost. What's this significant implication? I don't get the inconsistency. The difference is that the alternative argument from the state is that these defendants neither didn't intend to lie or they were saying they intended to commit burglaries. That's the state's argument. When each of them says no, no, I actually intended to do this other thing it severely undermines their credibility when the other guy in the car says no, no, we want to do another thing. It may implicate them by hearsay is what you're saying. You're saying it doesn't have to expressly implicate them but it implicates them by hearsay. But People v. James also says and Bruton says that you have to show in order to get a severance, in order to be eligible for a severance, so when the defendant is implicated by hearsay admissions by a co-defendant and their defenses are so antagonistic that the co-defendant cannot receive a fair trial. Is that the case here? Yes, absolutely. That is the case here because you can't have a fair trial when it's your word against the state's theory and your word is being undermined by the other guy who is in the car with you saying no, we did something else. That prevents you from receiving a fair trial. I would like to address the Ross case. The Ross is not a Bruton case, period. Bruton is a Confrontation Clause case. Both defendants in Ross testified. There is no Confrontation Clause problem if the other defendant testifies because each defendant can cross-examine the other. The problem here is that neither defendant in this case could cross-examine the other defendant. That's the main reason why Ross doesn't apply here. The other reason is that the evidence of Ross in fact, and actually look at the Supreme Court's decision in Ross because the Supreme Court in Ross neither defendant in Ross directly indicated the other one, but the other defendants said this is not a Bruton case because neither defendant directly said the other one did it. They said this is not a Bruton case because the other evidence was so strong, this evidence was cumulative, and because this evidence didn't really implicate either one because the only thing that was different was that one defendant said she knew the other one. It's more of a continuum. It's not a bright line. They have to directly say the other one did it to get to a Bruton violation. Maybe the problem is here. What do you perceive or what do you think Bruton meant when it says implicate? I think that that means incriminate. It means undermine the defense or Well, but that's not the examples you're giving. You're saying he didn't say he did it. That's not the examples you've been giving. Neither of these defendants said he intended to open that door and go in and steal anything. Did they? No, they don't need to. Well, okay. But as I said, you seem to be giving those as examples that this didn't happen in this case and therefore you've got an inconsistency here. Maybe. I mean, I think there's some question of whether there's really an inconsistency. And it's not. And again, I will ask the question. Why is there an inconsistency? Because one said we were looking at cars and the other said we were looking for University Village? Page three of the state's brief explicitly argues to you that the inconsistency between these two defense statements remove any doubt as to the defendant's guilt. Well, that's an argument. I'm talking about what happened at the trial. Look, it's not. You can't introduce hearsay evidence from another defendant in the defendant's trial. You can't, especially when that hearsay evidence implicates the other defendant. This evidence does implicate the other defendant because it undermines his defense. I'm not really sure. You're putting a lot of weight on the Sixth Amendment right to confront and you have that inability to do so in this case, correct? Right, because they don't. There's no ability to confront. And I point out that everybody in the trial court understood the prejudicial nature of these statements. The defense counsels filed these motions to eliminate a bar of defense statements. The only wrong theory. The State went out of its way to not express the argument to the jury that the inconsistency is implicated in the defendants, but what they do is they put both statements side by side. They tell the jury evaluate the truth of this one, evaluate the truth of this one, and let's have the jury pretend that they don't know that both statements are not the same. It did severely undermine the defendant's defense. And the State never said you also have to consider the testimony of Holly Kuhn and the testimony of the girlfriend about the time that she's lived there and they've dated. The State never talked about those issues? Well, they did, but the majority of their argument was spent talking about these two statements and why they didn't think they were credible. And they did put them side by side, and when they separated between the two statements, they talked about McLean's statement, then they said well, and Wittenberg's statement is a little bit different, and then they go on and talk about Wittenberg's statement. So the fact that these things are different was right there, right in front of the jury the entire time. So, once again, I just ask your honors to vacate the defense conventions, remand for new trial and or remand Wittenberg's trial for a clinical hearing. Thank you. Thank you. Thank you. We will be in recess until 1 o'clock.